[Crim. No. 926. First Appellate District, Division Two.—August 5, 1920.]

## In the Matter of the Application of HARRY RAYMOND for Writ of Habeas Corpus.

[1] CRIMINAL LAW—UNLAWFUL FORFEITURE OF CREDITS—HABEAS CORPUS.—Where a prisoner confined in a state penitentiary is charged with participating in a riot within the prison and, although he pleads not guilty, he is not afforded the hearing required by section 1588 of the Penal Code, his credits are unlawfully forfeited; and where, but for the forfeiture of such credits, his term of service has expired, he should be discharged from custody.

PROCEEDING on Habeas Corpus to secure the release of petitioner from a state prison on the ground that his credits were unlawfully forfeited. Petitioner ordered discharged.

The facts are stated in the opinion of the court.

Harry Raymond, *in pro. per.*, for Petitioner.

U. S. Webb, Attorney-General, and R. L. Chamberlain, Deputy Attorney-General, for Respondent.

NOURSE, J.—Petitioner was received at the state penitentiary at San Quentin about August 25, 1911, under a sentence of ten years for grand larceny. If entitled to the credits for good conduct allowed under section 1588 of the Penal Code, he should have been released February 25, 1918.

The petition alleges that during the month of July, 1912, without previous notice and without opportunity of preparing or presenting any defense, he was taken from his cell and led before the board of prison directors, where his credits were forfeited without trial, and that he is accordingly still held in custody by the warden of the penitentiary. Petitioner relies on the provisions of section 1588, which grant to a prisoner the credits as a matter of right, subject to forfeiture only "after due proof of the offense and notice to the offender."

[1] The evidence produced at the hearing in brief is: Petitioner, with some twenty-five other prisoners, was charged with participating in a riot within the prison. The directors met in a room situated in a building where these prisoners had been placed in solitary confinement. One prisoner after another was called before the board and asked to enter his plea. When the petitioner was called he pleaded not guilty. No testimony was taken in his presence; he was not confronted by any witnesses and had no opportunity of presenting any defense. The witnesses produced by the attorney-general at the hearing did not controvert this positive evidence given on behalf of petitioner.

"This section [1588] requires that the board of directors, before they shall take action, shall have given notice to the offender and heard proof touching the offense." (*In re Knowlton*, 136 Cal. 107, 109, [68 Pac. 480].)

Upon the record before the court there is no escape from the conclusion that petitioner was not afforded the hearing required by the code when his credits were forfeited. For that reason he is entitled to the credits allowed by the code and, his term of service having expired, he should be discharged from custody.

So ordered.

Brittain, J., concurred.

WASTE, P. J., *pro tem.*, Dissenting.—I dissent. I am unable to agree with my associates in the conclusion reached by them in the matter of the application for a writ of *habeas corpus*. It appears from the return to the writ, the affidavit of the clerk to the state board of prison directors, and oral testimony taken at the hearing, that on or about

the eleventh day of July, 1912, a riot occurred in the dining-room at the state prison at San Quentin, at a time when the board of prison directors was in session. The convicts supposed to be the ringleaders in the uprising—this petitioner among them—were apprehended, and were at once placed in solitary confinement. The prison remained in a turmoil, and the situation was tense when the board met again the next day. As a matter of precaution, the board met in a room in the building in which the solitary confinement cells were located, and into which those cells opened. All the members of the board and the clerk were present, and the session seems to have been regular in every particular.

The warden of the prison filed a charge, in writing, signed by him as warden, in which the petitioner, with others, was accused of having violated the rules of the prison by engaging in riotous conduct, and the destruction of state property. Raymond, the petitioner here, was brought before the board, informed of the charge made against him by the warden, which was read to him, and "asked if he was guilty or not guilty." He entered a plea of "not guilty," and the trial was proceeded with. The warden, the captain of the guard, and two guards were called before the board and testified in support of the charges. From the evidence it appeared that Raymond, together with other prisoners, had engaged in a general riot, had destroyed certain property within the prison belonging to the state of California, and that in subduing the insurrection, one inmate was killed and another seriously wounded. The board thereupon found and adjudged the petitioner guilty as charged, and declared his credits forfeited.

Thus far the record is clear and unassailable. Petitioner would impeach it by certain averments in his petition, and by oral testimony, to the effect that no evidence was taken in his presence; he was not confronted by any witnesses, and had no opportunity of presenting any defense.

There is a conflict and an uncertainty in the evidence as to the presence of the petitioner during the hearing. He testified that as soon as he was informed of the charges, and caused to enter his plea, he was taken back to his cell, which was about ten feet from where the board was in session, and that he did not hear the testimony given against

him. The captain of the guard testified that to the best of his recollection the petitioner was present. The affidavit of the clerk of the board is that the warden, the captain of the guard, and two guards testified in Raymond's presence. His testimony was not so positive as to the fact. It does not appear that Raymond objected to the consideration of his case by the board, sought to make any defense and call witnesses in his behalf, or asked for a continuance or delay in the matter. He has not claimed that he did. The minutes of the board do not show such to be the fact, and the affidavit of the clerk of the board is that he did not.

By section 1588 of the Penal Code it is provided that if any convict in the state prison "shall commit any assault upon his keeper, or any foreman, officer, convict, or person, or otherwise endanger life, or shall be guilty of any flagrant disregard of the rules of the prison, or commit any misdemeanor, or in any manner violate any of the rules and regulations of the prison, he shall forfeit all deductions of time earned by him for good conduct; . . . such forfeiture, however, shall be made only by the board of directors after due proof of the offense and notice to the offender; nor shall any forfeiture be imposed when a party has violated any rule or rules without violence or evil intent, of which the directors shall be the sole judges." As said by the writer of the majority opinion, "this section requires that the board of directors, before they take action, shall have given notice to the offender and heard proof touching the offense." In my judgment, it has not been made to appear but that the provision of the statute was fully complied with in the instant case, and that the situation here presented is no more aggravated than that considered in the case quoted from in the majority opinion, in which the writ was discharged and the petitioner remanded. (*In re Knowlton,* 136 Cal. 107, 109, [68 Pac. 480].) That should have been the order here.